UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

| | |
|---|---|
| SHIVA STEIN, | : |
| Plaintiff, | : Civil Action No. _____ |
| v. | : |
| | : **COMPLAINT FOR VIOLATIONS OF** |
| VITAMIN SHOPPE, INC., ALEXANDER W. | : **SECTIONS 14(a) AND 20(a) OF THE** |
| SMITH, DEBORAH M. DERBY, DAVID H. | : **SECURITIES EXCHANGE ACT OF** |
| EDWAB, MELVIN L. KEATING, SHARON | : **1934** |
| M. LEITE, GUILLERMO MARMOL, | : |
| HIMANSHU H. SHAH, TIMOTHY J. | : **JURY TRIAL DEMANDED** |
| THERIAULT, SING WANG, | : |
| Defendants. | : |

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Vitamin Shoppe, Inc. ("Vitamin Shoppe or the "Company"), and the members Vitamin Shoppe's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between Vitamin Shoppe and affiliates of by Vintage Capital Management, LLC ("Vintage Capital"), a private equity firm.

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Proxy Statement on Schedule 14A (the "Proxy

Statement") to be filed on September 30, 2019 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Valor Acquisition, LLC ("Merger Sub") will merge with and into the Company, resulting with the Company surviving the merger and becoming a wholly owned direct subsidiary of Franchise Group, Inc. (formerly known as Liberty Tax, Inc.) ("Parent") (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each Vitamin Shoppe common share issued and outstanding will be converted into the right to receive $6.50 per share in cash (the "Merger Consideration").

3. As discussed below, Defendants have asked Vitamin Shoppe's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction. The financial projections were also utilized by the financial advisor of the Company, BofA Securities, Inc. ("BofA") in conducting the valuation analyses in support of the fairness opinion. The Proxy Statement also omitted material information with respect with its analyses performed to reach the fairness opinions from BofA and information with respect to the sales process.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Vitamin Shoppe's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the Company is headquartered in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Vitamin Shoppe common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Gregory B. Brown M.D. has served as a member of the Board since 2017.

11. Individual Defendant Claes Glassel has served as a member of the Board since 2016.

12. Individual Defendant Alexander W. Smith has served as a member of the Board since April 2017, and is currently the Non-Executive Chairman.

13. Individual Defendant Deborah M. Derby has served as a member of the Board since December 2012.

14. Individual Defendant David H. Edwab has served as a member of the Board since November 2005.

15. Individual Defendant Melvin L. Keating has served as a member of the Board since April 2018.

16. Individual Defendant Sharon M. Leite has served as a member of the Board since August 2018 and is currently the Company's chief Executive Officer.

17. Individual Defendant Guillermo Marmol has served as a member of the Board since February 2016.

18. Individual Defendant Himanshu H. Shah has served as a member of the Board since April 2018.

19. Individual Defendant Timothy J. Theriault has served as a member of the Board since March 2016.

20. Individual Defendant Sing Wang has served as a member of the Board since April 2018.

21. Defendant Vitamin Shoppe is incorporated in Delaware and maintains its principal offices at 300 Harmon Meadow Blvd. Secaucus, New Jersey 07094.  The Company's common stock trades on the New York Stock Exchange under the symbol "VSI."

22. The defendants identified in paragraphs 10-20 are collectively referred to as the "Individual Defendants" or the "Board."

23. The defendants identified in paragraphs 10-21 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.   The Proposed Transaction**

24. Vitamin Shoppe, through its subsidiaries, operates as a omni-channel specialty retailer and contract manufacturer of nutritional products in the United States and internationally. It operates in two segments, Retail and Manufacturing. The company provides custom manufacturing and private labeling services for vitamin, mineral, and supplement products, as well as develops and markets own branded products. It offers vitamins, minerals, herbs, specialty supplements, sports nutrition products, and other health and wellness products of approximately 900 brands, such as own brands comprising The Vitamin Shoppe, BodyTech, True Athlete, Mytrition, plnt, ProBioCare, Next Step, and Betancourt Nutrition; and national brands, including Optimum Nutrition, Cellucor, Garden of Life, Quest Nutrition, Solaray, Solgar, Megafood, and Nature's Way. The company sells its products through Vitamin Shoppe and Super Supplements retail stores, as well as through its vitaminshoppe.com Website. As of May 29, 2019, it operated approximately 750 company-operated retail stores under the Vitamin Shoppe and Super Supplements retail banners. It also operates franchise stores. The company was formerly known as VS Holdings, Inc. and changed its name to Vitamin Shoppe, Inc. in November 2009. Vitamin Shoppe, Inc. was founded in 1977 and is headquartered in Secaucus, New Jersey.

25. On August 8, 2019, the Company and Parent jointly announced the Proposed Transaction:

> VIRGINIA BEACH, Va. & SECAUCUS, N.J.--(BUSINESS WIRE)--Liberty Tax, Inc. (OTC PINK: TAXA) ("Liberty Tax"), the parent company of Liberty Tax Service and Buddy's Home Furnishings, and Vitamin Shoppe, Inc. (NYSE: VSI) ("The Vitamin Shoppe"), an omni-channel, specialty retailer of

nutritional products, today announced that they have entered into a definitive agreement under which Liberty Tax will acquire The Vitamin Shoppe in an all cash transaction valued at approximately $208 million. The Vitamin Shoppe shareholders will receive $6.50 per share, which represents a premium of 43% to its closing share price on August 7, 2019, and a premium of approximately 59% to the 30-day volume weighted average price for the period ended on August 7, 2019.

The transaction is expected to be completed in the fourth quarter of 2019, subject to approval by The Vitamin Shoppe's shareholders, expiration or termination of the applicable waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as well as other customary closing conditions.

Liberty Tax intends to finance the transaction with up to approximately $170 million in debt financing and a combination of available cash and/or through the issuance of common stock of Liberty Tax. In connection with the execution of the merger agreement, Liberty Tax entered into debt commitment letters with institutional lenders and an equity commitment letter with an affiliate of Vintage Capital Management, LLC.

* * *

Under the direction of its board of directors, Liberty Tax intends to continue to evaluate the acquisition of franchise-oriented or complementary businesses, including businesses that are not presently subject to franchising arrangements but that have the potential to be franchised in the future. The Vitamin Shoppe transaction represents the continued evolution of the business model of Liberty Tax, and follows the recent acquisition of Buddy's Home Furnishings, which was completed in July 2019. In recognition of this new strategic focus, Liberty Tax previously announced its intention to change its name to Franchise Group, Inc. Liberty Tax anticipates that its name change will become effective in the third or fourth quarter of 2019.

Kirkland & Ellis LLP acted as legal counsel to The Vitamin Shoppe and BofA Merrill Lynch acted as its financial advisor. Troutman Sanders LLP acted as legal counsel to Liberty Tax.

26.   The Board has unanimously agreed to Proposed Transaction.  It is therefore imperative that Vitamin Shoppe's stockholders are provided with the material information that

has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.      The Materially Incomplete and Misleading Proxy Statement**

27.     On September 30, 2019, Vitamin Shoppe filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

28.     With respect to the financial projections disclosed in the Proxy Statement, the Proxy Statement fails to provide material information.

29.     For the Company *May Projections* and *July Projections* (the "Projections"), the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics such as (1) Gross Margin; (2) Adjusted Gross Profits; (3) Adjusted SG&A; (4) Adjusted EBIT; and (5) Adjusted EBITDA, but fails to provide: (i) the line items used to calculate the non-GAAP measures, or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Proxy Statement at 42.

30.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory

7

mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

31. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

32. Thus, to cure the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures. At the very least, the Company must disclose the line item forecasts for the financial metrics that were used to calculate the aforementioned non-GAAP measures. Such forecasts are necessary to make the non-GAAP forecasts included in the Proxy Statement not misleading.

33. With respect to BofA's *Selected Publicly Traded Companies Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed by BogA in the analysis. Proxy Statement at 46.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

34. With respect to BofA's *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for the transactions observed by BofA in the analysis.

35. With respect to BofA's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose (i) the basis for applying exit adjusted EBITDA multiples of 2.5x to 4.0x; (ii) the basis of choosing a range of discount rates from 8.50% to 10.50%. Proxy Statement at 48.

36. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

37. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

39. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

40. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

41. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

42. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

43. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44. The Individual Defendants acted as controlling persons of Vitamin Shoppe within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Vitamin Shoppe, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Vitamin Shoppe, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

45. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Vitamin Shoppe, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

47. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

48. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

50. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: September 30, 2019              **WOLF HALDENSTEIN ADLER**
                                       **FREEMAN & HERZ LLP**

                                   By: */s/ Gloria Kui Melwani*
                                       Gloria Kui Melwani
                                       270 Madison Avenue
                                       New York, NY 10016
                                       Telephone: (212) 545-4600
                                       Facsimile: (212) 686-0114
                                       Email: melwani@whafh.com

                                       *Attorneys for Plaintiff*